UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NATHANIEL JAMES PHILLIPS,        :
SR.,
                                 :

        **Petitioner**        :        CIVIL ACTION NO. 3:26-256

                                 :

    v.                           :        (JUDGE MANNION)

                                 :

COMMONWEALTH OF
PENNSYLVANIA, *et al.*,           :

        **Respondents**       :

## MEMORANDUM

Currently before the Court are *pro se* Petitioner Nathaniel James Phillips, Sr. ("Phillips")'s application for leave to proceed *in forma pauperis* ("IFP Application") and petition for a writ of habeas corpus under 28 U.S.C. §2254. In his Section 2254 petition, Phillips raises ineffective-assistance-of-counsel claims against his trial and postconviction counsel. For the reasons stated below, the Court will (1) grant the IFP Application, (2) dismiss with prejudice Phillips's ineffective-assistance-of-counsel claims against his postconviction counsel, and (3) order Phillips to show cause why the Court should not dismiss the remainder of his Section 2254 petition because it is time-barred and because his claims are unexhausted and procedurally defaulted.

## I.    BACKGROUND

### A.    State-Court Proceedings

On March 31, 2022, Phillips pleaded guilty to one count of persons not to possess firearms (18 Pa. C.S. §6105(a)(1)) in the Dauphin County Court of Common Pleas ("CCP"). *See* (Doc. 1 at 1); *Commonwealth v. Phillips*, No. 1176 MDA 2024, 2025 WL 1483008, at *1 (Pa. Super. Ct. May 23, 2025) (unpublished); Docket, *Commonwealth v. Phillips*, No. CP-22-CR-1826-2021 (Dauphin Cnty. Ct. Com. Pl.) ("CCP Dkt.").[1] On July 7, 2022, the CCP sentenced Phillips to state incarceration for a minimum of fifty-two months to a maximum of one-hundred-and-four months. *See* (Doc. 1 at 1); *Phillips*, 2025 WL 1483008, at *1. Following his sentencing, Phillips did not file a post-sentence motion or a direct appeal to the Pennsylvania Superior Court. *See* (Doc. 1 at 2); *Phillips*, 2025 WL 1483008, at *1; CCP Dkt. He did, however, file a *pro se* "Motion to Modify and Reduce Sentence," which the CCP

---

[1] The Court takes judicial notice of the docket sheet for Phillips's underlying criminal case because it is a public state-court record that is available through the Unified Judicial System of Pennsylvania's Web Portal for Pennsylvania criminal matters (https://ujsportal.pacourts.us). *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)); *see also Mickell v. Lycoming Cnty. Cent. Collections Off. & Admin.*, 821 F. App'x 74, 75 (3d Cir. 2020) (unpublished) (taking judicial notice of Court of Common Pleas of Lycoming County criminal docket).

construed as a timely first petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§9541–46 ("PCRA"), on August 24, 2022. *See* (Docs. 1 at 2, 3; 1-1 at 1); *Phillips*, 2025 WL 1483008, at *1; CCP Dkt.

The CCP appointed counsel to assist Phillips in prosecuting his first PCRA petition, after which new counsel filed for, and received, numerous extensions of time to either file a counseled PCRA petition or withdraw as Phillips's counsel. *See* (Docs. 1 at 4; 1-1 at 1); CCP Dkt. The CCP later issued an order on September 6, 2023, which removed Phillips's PCRA counsel and replaced them with new PCRA counsel. *See* (Docs. 1 at 4; 1-1 at 1); CCP Dkt.

Approximately one week after the CCP appointed new PCRA counsel for Phillips, counsel filed a motion to withdraw as Phillips's counsel in which they asserted that Phillips's PCRA petition was meritless. *See* (Docs. 1 at 4; 1-1 at 2); CCP Dkt. Then, Phillips filed a *pro se* motion to withdraw his claims in his first PCRA petition on September 25, 2023. *See* (Docs. 1 at 4; 1-1 at 2); CCP Dkt. Based on Phillips's motion, the PCRA court entered an order granting counsel's motion to withdraw and dismissing Phillips's PCRA petition on or about October 27, 2023. *See* (Docs. 1 at 4; 1-1 at 1–2); CCP Dkt. Phillips did not appeal from this decision. *See* (Doc. 1 at 4); CCP Dkt.

- 3 -

Phillips filed a second PCRA petition, in which he challenged the constitutionality of his firearms conviction based on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), on March 5, 2024. *See* (Doc. 1 at 3); *Phillips*, 2025 WL 1483008, at *1; CCP Dkt. The PCRA court dismissed Phillips's second PCRA petition as untimely, and without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907, on July 24, 2024. *See* (Doc. 1 at 4); *Phillips*, 2025 WL 1483008, at *1; CCP Dkt. Phillips timely appealed from the dismissal of his petition to the Superior Court, which affirmed the dismissal via an unpublished decision issued on May 23, 2025. *See* (Doc. 1 at 4); *Phillips*, 2025 WL 1483008, at *1. Phillips did not seek further review by filing a petition for allowance of appeal with the Pennsylvania Supreme Court.

### B.   Federal Proceedings

Phillips commenced the instant action by filing his Section 2254 habeas petition, IFP Application, and prisoner trust fund account statement, all of which the Clerk of Court docketed on January 21, 2026. (Docs. 1–3.)[2]

---

[2] Under the federal "prisoner mailbox rule," a *pro se* prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). Here, Phillips declares that he placed his Section 2254 habeas petition in the prison mailing system on December 4, 2025. *See* (Doc. 1 at 14). However, he also attaches to his petition a letter dated January 21,

*(footnote continued on next page)*

- 4 -

Unfortunately, Phillips's prisoner trust fund account statement was not certified as required by the *in forma pauperis* statute, *see* 28 U.S.C. §1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor, . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined."). As such, two Administrative Orders issued requiring the superintendent at Phillips's place of incarceration to submit Phillips's certified account statement to the Clerk of Court. (Docs. 4, 6.) The Clerk of Court docketed Phillips's certified account statement on March 16, 2026. (Doc. 7.)

In his Section 2254 petition, Phillips claims that his trial and PCRA counsel were ineffective for "failing to argue the *Bruen* analysis[,] . . . the

---

2026, in which he states that his "[a]pplication was completed and sent out for mailing on Dec. 4, 2025. However, due to insufficient funds[,] the Institution returned the mail back to [him, and he was un]able to proceed with mailing until the above date." (*Id.* at 15).

Based on Phillips's representation in his letter, the Court will not deem December 4, 2025, to be the petition's filing date because a prisoner cannot claim credit for an earlier filing date in circumstances where they placed their submission in the prison mail system for filing on a certain date only to have prison officials not mail it to the court due to an issue caused by the petitioner. Instead, the Court will give Phillips the benefit of a January 21, 2026 filing date, even though the Clerk of Court did not docket his petition until February 3, 2026.

constitutionality of law [sic][, and the] legality of the muzzle-loader apply [sic]

to the antique firearm exception [and] not the [F]irearms Act (felony) [sic]."

(Doc. 1 at 5 (emphasis added)).[3] For relief, Phillips seeks an order "vacat[ing]

or reduc[ing his] sentence due to the [I]egality of the constitutional law of the

[Second] Amendment." (*Id.* at 14.)

Additionally, Phillips argues that he timely filed his habeas petition

because the "ineffectiveness of counsel" rendered him "unable to obtain

legal assistance," and "caused the time bar." (*Id.* at 9.) He further elaborates

on his timeliness argument as follows:

> As the PCRA court decided the first timeliness exception
> incorrectly, [I] argue[] that the PCRA was timely pursuant to
> *Bruen* applying retroactively, and that the matter should be
> remanded for a hearing on the merits of [my] argument. As the
> court never acknowledged or ruled on the second timeliness
> exception regarding governmental interference, [I] argue[] that
> the matter should be remanded and a hearing held to develop
> the record to determine the applicability of the timeliness [sic].
> (iii) [sic] the right asserted is a constitutional right that was
> recognized by the Supreme Court of Pennsylvania after the time

---

[3] Phillips indicates that he raises four claims in his petition. *See* (*id.* at 5–11). However, Phillips's second claim, which references "[g]overnmental interference" and "ineffective assistance of [three] serial counsels [sic]," does not identify the precise claim he raises and instead mentions only a portion of his state-court procedural history relating to his first PCRA petition. *See* (*id.* at 6–8). Phillips third claim appears to be duplicative of his first claim, *i.e.*, that counsel were ineffective for failing to argue about *Bruen*'s applicability to his case. *See* (*id.* at 8–9). For his fourth and final claim, Phillips raises an argument relating to the timeliness of his Section 2254 petition, *see* (*id.* at 10–11), which is not a ground upon which he can obtain habeas relief. Therefore, the Court construes Phillips's petition as containing a single claim.

period provided in this Section, and has been held by that court to apply retroactively.

(*Id.* at 13 (emphasis added)).

## II.   LEGAL STANDARDS

### A.   Applications for Leave to Proceed *in Forma Pauperis*

Under 28 U.S.C. §1915(a)(1), a district court "may authorize the commencement . . . of any [civil] suit, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor." *Id.* This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, §1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished).

## B.    Screening of Section 2254 Habeas Petitions

District courts are tasked with conducting a preliminary review of Section 2254 habeas petitions. *See* R. 4, 28 U.S.C. foll. §2254. When conducting this review, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." *Id.*

## III.    DISCUSSION

### A.    The IFP Application

After reviewing Phillips's IFP Application and certified prisoner trust fund account statement, it appears that he lacks the financial means to prepay the filing fee in this matter. Therefore, the Court will grant the IFP Application and allow Phillips to proceed *in forma pauperis* in this action.

### B.    Screening of Phillips's Section 2254 Petition

As for Phillips's Section 2254 habeas petition, it appears that the Court should dismiss it due to the following issues: (1) it is barred by the applicable statute of limitations; (2) Phillips failed to exhaust any of his claims, and there is no basis upon which to excuse his procedural default; and (3) his claims about PCRA counsel's alleged ineffectiveness are not cognizable under Section 2254. The Court will address each issue in turn.

- 8 -

### 1.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations, which runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

In this case, the only applicable AEDPA start date is subsection (A) because Phillips does not identify any facts or assert any plausible arguments permitting him to invoke subsections (B) through (D). Regarding subsection (B), even though Phillips mentions "governmental interference" in his petition, *see* (Doc. 1 at 6), which could be his attempt to invoke this subsection, he identifies only the conduct of his appointed counsel in his state proceedings as the alleged "governmental interference." Such a claim

is meritless because any actions by his defense counsel or PCRA counsel, even if they were public defenders paid by the Commonwealth or conflict counsel paid by the Commonwealth and/or Dauphin County, would not qualify as "State action" for purposes of subsection (B). *See Polk Cnty. v. Dodson*, 454 U.S. 312, 320–21 (1981) (determining that a public defender representing a defendant in a criminal case is not engaged in state action, regardless of whether the State provides their compensation); *see also Newton v. City of Wilmington*, 676 F. App'x 106, 108 (3d Cir. 2017) (unpublished) (concluding that conflict counsel who represented plaintiff in his criminal case were not state actors for purposes of 42 U.S.C. §1983); *T.R. v. Havens*, 612 F. App'x 83, 89 (3d Cir. 2015) (unpublished) (concluding that defense attorney appointed as conflict counsel to represent plaintiff in criminal proceedings was not a state actor for purposes of Section 1983); *cf. Steward v. Meeker*, 459 F.2d 669, 670 (3d Cir. 1972) (per curiam) (concluding privately retained defense counsel was not acting under color of state law while representing plaintiff in criminal case). Therefore, "courts have held that negligence by a petitioner's public defender, just like negligence by state-appointed counsel, does not constitute state action for the purposes of §2241(d)(1)(B) to delay the accrual of the AEDPA statute of limitations." *Henry v. Smith*, No. 16-cv-5010, 2017 WL 2963000, at *4 (E.D.

Pa. Feb. 28, 2017) (citing cases), *report and recommendation adopted*, 2017 WL 2957819 (E.D. Pa. July 10, 2017).

Concerning subsection (C), Phillips does not expressly invoke this subsection in his petition; however, he appears to argue that the PCRA court erred by not concluding that *Bruen* was a newly recognized constitutional right that applied retroactively to his case. *See* (Doc. 1 at 13). To the extent that Phillips contends that *Bruen* warrants a later start date under subsection (C), he is mistaken for three reasons.

First, as numerous federal courts have held, *Bruen* did not establish a new constitutional rule. *See, e.g.*, *United States v. Barragan-Gutierrez*, 136 F.4th 998, 1002–05 (10th Cir. 2025) (concluding that the Supreme Court did not announce a new constitutional rule in *Bruen*); *United States v. Goodall*, No. 22-cr-60, 2026 WL 210050, at *2 (E.D. Va. Jan. 27, 2026) ("*Bruen* did not announce a newly recognized right . . . ."); *Meacham v. United States*, No. 22-cv-149, 2025 WL 778168, at *3 (E.D. Tenn. Mar. 11, 2025) ("[T]he Supreme Court did not recognize a new right in *Bruen*. It clarified the test that firearm regulations must meet to pass constitutional muster . . . ." (citing *Bruen*, 597 U.S. at 13)); *United States v. Neal*, No. 19-cr-230-1, 2024 WL 1095814, at *2 (W.D. Pa. Mar. 13, 2024) ("In *Bruen*, the Supreme Court did

- 11 -

not announce a new rule of constitutional law . . . .").[4] As the Honorable Robert D. Mariani has explained when addressing a similar habeas claim premised on *Bruen*:

It is far from clear that *Bruen* recognized any new right at a[l]l . . . . . *Bruen* was not a criminal case, and it did not address the statutes under which [the habeas petitioner] was convicted . . . . *Bruen* also did not state that it recognized any new right. *Bruen* appears merely to have clarified the appropriate test for evaluating whether regulations on firearm possession are unconstitutional under the Second Amendment, and then applied that test to a non-criminal state law dealing with firearms licensing. At most, *Bruen* reiterated the proper constitutional analysis, set forth in *District of Columbia v. Heller*, 544 U.S. 570 (2008), and announced that state laws imposing discretionary licensing regimes violate the Second Amendment. *See* 142 S. Ct. at 2161 (Kavanaugh, J., concurring). Because the Second Amendment, as concurring justices noted, "allows a 'variety' of gun regulations," *id.* (quoting *Heller*, 554 U.S. at 636, 128 S.Ct. 2783), *Bruen* cannot be taken as a declaration that all gun restrictions . . . are unconstitutional. The Court thus concludes

---

[4] These cases involved motions to vacate, set aside or correct a sentence under 28 U.S.C. §2255, the federal statute authorizing collateral challenges to federal criminal judgments. Nevertheless, the applicable statutory language relating to start dates for newly recognized constitutional rights in Section 2255 is nearly identical to Section 2244. *Compare* 28 U.S.C. §2244(d)(1)(C) (providing that AEDPA's limitation period runs from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"), *with* 28 U.S.C. §2255(f)(3) (stating that the limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").

that *Bruen* did not announce any new rule that affects [the petitioner's] conviction.

*Folk v. Sage*, No. 23-cv-71, 2023 WL 5211631, at *3 n.3 (M.D. Pa. Aug. 14, 2023).

Second, Phillips fails to show that the Supreme Court previously determined that *Bruen* applies retroactively to cases on collateral review. *See In re Rosado*, 7 F.4th 152, 157 (3d Cir. 2021) (explaining that the Supreme Court must make the newly recognized right retroactive to cases on collateral review). Moreover, the Court's research reveals that no federal court has concluded that the Supreme Court made *Bruen* retroactive. *See, e.g., In re Terry*, No. 22-13615-C, 2022 WL 20033240, at *2 (11th Cir. Nov. 14, 2022) (unpublished) ("[T]to the extent that the right recognized in *Bruen* is a previously unavailable, new rule of constitutional law, *Bruen* has not been made retroactive to cases on collateral review by the Supreme Court." (citations and internal quotation marks omitted)); *Goodall*, 2026 WL 210050, at *2 ("*Bruen* did not announce a newly recognized right that is retroactively applicable to cases on collateral review." (citations omitted)); *Neal*, 2024 WL 1095814, at *2 ("In *Bruen*, the Supreme Court did not announce a new rule of constitutional law retroactively applicable to persons with criminal convictions, and thus is inapplicable to the present circumstances.").

Third, and finally, even if the Court presumed that *Bruen* announced a newly recognized right that is retroactively applicable to cases on collateral review, Phillips's instant Section 2254 is facially untimely. Phillips had one year from June 23, 2022, the date the Supreme Court decided *Bruen*, to file his Section 2254 petition. *See In re Rosado*, 7 F.4th at 157 ("The relevant date is when the Court first recognized the right, *not* when it made it retroactive." (citing *Dodd v. United States*, 545 U.S. 353, 357 (2005))); *see also Johnson v. Thornell*, No. 23-cv-4, 2025 WL 2393575, at *4 (D. Ariz. Feb. 19, 2025) (explaining that Section 2244(d)(1)(C) "is clear that the clock starts on the day that the Supreme Court recognizes the right, not on the date that the right is made retroactive" (citing *Dodd*, 545 U.S. at 356–57)). Thus, Phillips had until no later than June 23, 2023, to file his petition, and he filed his petition more than two-and-a-half years after this deadline. Accordingly, even if the Court presumed that *Bruen* announced a newly recognized right that is retroactively applicable to cases on collateral review, he did not file the instant petition within one year of that decision. *See, e.g., Wilkins v. United States*, Nos. 13-cr-214, 24-cv-740, 2026 WL 937410, at *2 (E.D.N.C. Apr. 7, 2026) (determining that habeas petition was untimely because petitioner filed it, *inter alia*, "more than two years after *Bruen* was decided").

- 14 -

Regarding subsection (D), Phillips does not argue that he is entitled to a later start date under this subsection. He also does not assert that he only learned of the facts upon which he claims his defense counsel and PCRA counsel were ineffective within one year of the date he filed the instant petition. Therefore, Phillips is not entitled to the benefit of the start date set forth in subsection (D), and the only applicable start date is the one provided by subsection (A).

Subsection (A) provides that AEDPA's one-year limitations period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). When calculating the commencement of the statute of limitations for purposes of subsection (A), the Court must determine when Phillips's judgment became final.

"Under § 2244(d)(1)(A), a state court criminal judgment becomes 'final' and the statute of limitations begins to run, 'at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires.'" *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999) (quoting *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) and citing *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999)). Here, Phillips's judgment became final on August 6, 2022, when he did not file post-sentence motions or an appeal

- 15 -

to the Superior Court following his sentencing on July 7, 2022. *See* Pa. R.A.P. 903(a)(3) ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court."). Therefore, AEDPA's one-year statute of limitations began to run on August 7, 2022, and Phillips had one year from that date to file a Section 2254 petition unless any statutory or equitable tolling period applies.

As for statutory tolling, AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2). A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). "State prisoners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001). If the state court dismisses a late-filed application for post-conviction collateral review because it is time-

- 16 -

barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes. *Merritt v. Blaine*, 326 F.3d 157, 165–66 (3d Cir. 2003).

As indicated above, Phillips appears to have timely filed a first PCRA petition in the Court of Common Pleas on August 24, 2022. At the time Phillips filed his first PCRA petition, seventeen days of the one-year AEDPA limitations period had passed. Once Phillips filed his timely PCRA petition, the limitations period tolled until the conclusion of those proceedings in the Pennsylvania state courts.

Phillips's PCRA proceedings concluded on November 26, 2023, which was thirty days after the Court of Common Pleas denied his PCRA petition and he did not file an appeal to the Superior Court. Consequently, AEDPA's one-year clock started again on November 27, 2023, and he had three hundred and forty-eight days, *i.e.*, until November 8, 2024, to file his Section 2254 habeas petition in this Court. Furthermore, Phillips's second PCRA petition, which was found to be untimely and affirmed on appeal, was not "properly filed" and, as such, did not toll the AEDPA's statute of limitations under Section 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (holding that, because state court rejected PCRA petition as untimely, petitioner was "not entitled to statutory tolling under §2244(d)(2)"); *Wallace*

- 17 -

*v. Mahanoy*, 2 F.4th 133, 149 (3d Cir. 2021) (holding that petitioner's PCRA petition was not "properly filed" for statutory tolling purposes because the state court had dismissed the petition as untimely and federal courts must "afford deference" to that decision); *Merritt v. Blaine*, 326 F.3d 157, 165–66 (3d Cir. 2003) ("[W]e must defer to the state court's holding that [the petitioner]'s PCRA petition was untimely and it follows that it was not 'properly filed' under AEDPA."). Overall, Phillips did not file his petition until more than a year after his deadline expired.[5]

Given that Phillips's habeas petition appears to be facially untimely, the only way that the Court could consider it would be if equitable tolling applies. AEDPA's one-year statute of limitations is subject to equitable tolling "in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 634, 649 (2010). A "'petitioner' is 'entitled to equitable tolling' only if [they] show[] '(1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way' and prevented timely filing." *Id.* (quoting *Pace*, 544 U.S. at 418 (emphasis removed in original)); *see also Pace*, 544 U.S. at 419 (explaining that "[u]nder long-established principles, [a]

---

[5] As indicated *supra*, the Court deems Phillips's petition to have been filed on January 21, 2026. However, even if the Court used the mailing date Phillips included in his declaration, December 4, 2025, *see* (Doc. 1 at 14), his petition remains facially untimely.

- 18 -

petitioner's lack of diligence" will "preclude[] equity's operation" (citations omitted)). In general, equitable tolling may be appropriate if (1) the petitioner has been "actively misled[;]" (2) the petitioner "has in some extraordinary way been prevented from asserting his rights;" or (3) the petitioner "has timely asserted his rights mistakenly in the wrong forum." *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (quoting *Fahy*, 240 F.3d at 244). "[T]here are no bright lines in determining whether equitable tolling is warranted in a given case. Nevertheless, courts must be sparing in their use of equitable tolling, and should do so only when the principles of equity would make the rigid application of a limitation period unfair." *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) (internal quotation marks and citations omitted).

Phillips does not include any arguments in his petition warranting the Court's exercise of discretion to equitably toll the limitations period. Nevertheless, the Court will provide Phillips with an opportunity to address the equitable tolling issue before the Court dismisses his petition as untimely. *See Day v. McDonough*, 547 U.S. 198, 210 (2006) (determining that district courts must provide notice and opportunity to respond before *sua sponte* dismissing habeas petitions as untimely).

### 2.   Exhaustion of State Remedies and Procedural Default

Along with the statute-of-limitations bar, it does not appear that Phillips exhausted his claims in his petition. Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. §2254(b), which provides that habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).

Section 2254 codifies this principle by requiring that a habeas petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. §2254(b)(1)(A), meaning a state prisoner must "fairly present" their claims in "one complete round of the state's established appellate review process," before bringing them in federal court. *See O'Sullivan*, 526 U.S. at 845 (stating that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those

claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *See Picard*, 404 U.S. at 278 ("[T]he substance of a federal habeas corpus claim must first be presented to the state courts."); *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). A petitioner's mere reliance on the same constitutional provision in support of their state and federal claims does not render the two claims substantially equivalent. *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976). Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

In addition,

> [w]hen a claim is not exhausted because it has not been "fairly presented" to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is "an absence of available State corrective process." 28 U.S.C. §2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims, and federal courts may not consider the merits of such claims unless the applicant

establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse [their] default.

*McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded their efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if they can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

- 22 -

that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339–40 (3d Cir. 2004).

In *Martinez v. Ryan*, 566 U.S. 1 (2010), the Supreme Court recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Workman v.*

- 23 -

*Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *see also*

*Martinez*, 566 U.S. at 13–14. A petitioner demonstrates that post-conviction

counsel's ineffectiveness caused the procedural default by showing that

post-conviction counsel's performance was deficient under the first prong of

the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See*

*Preston v. Superintendent Graterford, SCI*, 902 F.3d 365, 376 (3d Cir. 2018);

*see also Workman*, 915 F.3d at 937–38. Satisfaction of the first *Strickland*

prong requires a petitioner to demonstrate that "counsel's representation fell

below an objective standard of reasonableness," with reasonableness being

judged under professional norms prevailing at the time counsel rendered

assistance. *Strickland*, 466 U.S. at 688.

In this case, Phillips did not exhaust any claim raised in his Section

2254 habeas petition because (1) he did not file a direct appeal, (2) the CCP

dismissed Phillips's first PCRA petition after he moved to withdraw it, and (3)

the CCP dismissed his second PCRA petition as untimely. In other words,

Phillips never fairly presented his habeas claims in "one complete round of

the state's established appellate review process," before asserting them in

this case. *See O'Sullivan*, 526 U.S. at 845.

Additionally, Phillips could not seek relief on his habeas claims in the

Pennsylvania state courts because any petition he filed would be deemed

- 24 -

untimely. *See* 42 Pa. C.S. §9545(b)(1) (providing that any PCRA petition "shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that: (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively."). Therefore, Phillips's habeas claims in this case appear to be procedurally defaulted unless he can show (1) cause for his failure to comply with state procedural rules and resulting prejudice or (2) that a fundamental miscarriage of justice will result if the claim is not considered.

Phillips has not made such a showing in this case to date. Although he asserts ineffective-assistance-of-counsel claims, *see* (Doc. 1 at 5–9, 13), it is unclear whether he seeks to rely on *Martinez* to excuse his procedural default, and the Court will not presume the basis for any argument he might assert to excuse his procedural default. As with the potential statute-of-

- 25 -

limitations bar, the Court will provide Phillips with an opportunity to address this issue.

### 3. Cognizability of Phillips's Claims Against PCRA Counsel

Phillips asserts that both his PCRA counsel were ineffective when representing him during his first PCRA proceedings. *See* (*id.* at 5–9, 13). This claim is not cognizable under Section 2254. *See* 28 U.S.C. §2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Martinez*, 566 U.S. at 17 (pointing out that Section 2254(i) precludes a habeas petitioner "from relying on the ineffectiveness of [their] postconviction attorney as a 'ground for relief'"). Accordingly, the Court will dismiss with prejudice Phillips's ineffective-assistance-of-counsel claim insofar as he asserts it against his PCRA counsel.

## IV. CONCLUSION

For the reasons stated above, the Court will (1) grant the IFP Application, (2) dismiss with prejudice Phillips's ineffective-assistance-of-counsel claims against his postconviction counsel, and (3) order Phillips to show cause why the Court should not dismiss the remainder of his Section

2254 petition because it is time-barred and because his claims are unexhausted and procedurally defaulted. An appropriate Order follows.

MALACHY E. MANNION
United States District Judge

DATE: 4/22/26

26-0256-01

- 27 -